| | | |
|---|---|---|
| THE INSURANCE COMMISSIONER OF THE STATE OF CONNECTICUT, as Liquidator of the Connecticut Surety Company, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 07-262 Erie |
| RUDOLPH A. NOVOTNY and KAREN J. NOVOTNY, | ) ) ) | Judge Sean J. McLaughlin |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

This matter is before the Court upon cross-motions for summary judgment filed by plaintiff, The Insurance Commissioner of Connecticut ("Plaintiff"), as Liquidator of the Connecticut Surety Company ("CSC"), and by defendants, Rudolph A. Novotny and Karen J. Novotny ("Defendants").

## I. BACKGROUND

This is an action instituted by the Insurance Commissioner of the State of Connecticut on behalf of CSC, a Connecticut-domiciled surety company that issues commercial and contract surety and fidelity bonds. Defendants, as managing members of RAN Oil Company ("RAN Oil"), a Pennsylvania limited liability company, executed a General Indemnity Agreement ("the Agreement") with CSC on April 12, 1999. In connection with the Agreement, CSC issued a series of bonds on behalf of RAN Oil, listing the Pennsylvania Department of Revenue ("The Department") as beneficiary. The Agreement obligated Defendants to indemnify and reimburse CSC for all sums CSC paid out "in and about the matters contemplated by" the Agreement. The Agreement further obligated Defendants to:

> exonerate, hold harmless, indemnify and keep indemnified [CSC] from and against any and all claims, demands and liability for loss, costs, and expenses of whatsoever kind or nature, including court costs, counsel fees, costs of investigation, and from and against any

1

and all other such losses and expenses which [CSC] may sustain due to:

    (A)    Execution or having procured the execution of the BONDS;

    (B)    Failure of . . . [Defendants] to perform or comply with any of the covenants or conditions of this Agreement;

    (C)    Enforcement of any of the covenants or conditions of this Agreement;

    (D)    Performance of any investigation, obtaining or attempting to obtain a release, or recovering or attempting to recover loss or unpaid bond premium in connection with any BOND; [and]

    (E)    Prosecution or defense of any action or claim made in connection with any BOND, whether [CSC] at its discretion, elects to employ its own counsel or permits, or requires . . . [Defendants] to make arrangements for [CSC's] legal representation.

(Agreement, ¶ 3).

Following the execution of the Agreement, RAN Oil failed to pay fuel taxes owed to the Department. On September 13, 2002, the Department filed claims with CSC on the bonds to recover RAN Oil's unpaid taxes in the amount of $1,144,747.72. On May 4, 2006, following investigation and negotiations with the Department, CSC and the Department entered into a settlement agreement whereby all claims against CSC were resolved in consideration of CSC's agreement to pay the Department the amount of $425,000.00. CSC tendered this payment on May 30, 2006.

On August 18, 2006, CSC submitted a written demand for indemnification upon the Defendants pursuant to the Agreement. Defendants failed to respond. Thereafter, on September 24, 2007, Plaintiff instituted this action behalf of CSC pursuant to the powers conferred upon the Insurance Commissioner under Connecticut's Insurers Rehabilitation and Liquidation Act, Conn. Gen. Stat. §§ 38a-903 *et seq*.

Plaintiff and Defendants filed cross-motions for summary judgment on December 2, 2008. In its motion, Plaintiff asserts that Defendants violated the terms of the Agreement with CSC by refusing to indemnify and reimburse CSC for its payment to the Department of $425,000.00 in

satisfaction of the Department's tax claims.[1]  The Defendants cross-motion is premised exclusively on the contention that the Plaintiff's cause of action is barred by the running of the statute of limitations.[2]

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  In order to withstand a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In evaluating whether the non-moving party has established each necessary element, the Court must grant all reasonable inferences from the evidence to the non-moving party.  Knabe v. Boury Corp., 114 F.3d 407, 410, n.4 (3d Cir. 1997) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)).  "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id.  (quoting Matsushita, 475 U.S. at 587).

## III. DISCUSSION

A federal court sitting in diversity must apply the substantive law of the state in which it sits,

---

[1]      Specifically, Plaintiff submits that it has adduced and attached sufficient evidence to satisfy each of the following requisite elements of its claim: (1) the existence of a contract, (2) the breach of a duty imposed by the contract, and (3) resultant damages.  See Church v. Tentarelli, 953 A.2d 804, 807-08 (Pa. Super. 2008) (quoting Pittsburgh Constr. Co. v. Griffith, 834 A.2d 572, 580 (Pa. Super. 2003)).

[2]      Counsel for Defendants conceded at oral argument that their motion was based solely on the contention that the Plaintiff's claim is time barred.

including its choice of law rules.  See Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 462 (3rd Cir. 2006) ("To resolve the issue of what law to apply . . ., we look to the choice of law rules of the state of Pennsylvania, because in an action based on diversity of citizenship jurisdiction, we must apply the substantive law of the state in which the District Court sat, including its choice of law rules.") (quoting Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).  "In most situations, Pennsylvania courts apply the statute of limitations of the forum."  Mack Trucks, Inc. v. Bendix-Westinghouse Auto. Air Brake Co., 313 U.S. 487, 496 (1941); see also Ross v. Johns-Manville Corp., 766 F.2d 823, 826 (3rd Cir. 1985) ("Pennsylvania courts ordinarily apply the Pennsylvania statute of limitations.").

A limited exception to this general rule is provided by Pennsylvania's "borrowing statute," 42 Pa.C.S. § 5521(b), which provides that "[t]he period of limitations applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the laws of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim."  Id.  See also Ross, 766 F.2d at 826 n. 3. For this statute to apply, the cause of action must accrue in another state and the foreign jurisdiction's statute of limitations must bar the claim before Pennsylvania's statute of limitations would.  See McKenna v. Ortho. Pharm. Co., 622 F.2d 657, 660 (3rd Cir. 1980).  In applying each jurisdiction's statute of limitations, the substantive law of each state is used to determine when the claim accrued therein.  See McKenna, 672 F.2d at 660-61 ("[T]he Pennsylvania 'borrowing statute' requires us to look to the law of the state where the cause of action arose to determine not only the prescribed period of limitations but also the point at which the statute began to run.").

The parties rely on the Pennsylvania borrowing statute and implicitly suggest that the claim arose in Connecticut.  I will assume, without conclusively deciding, that is the case because Plaintiff's claim is timely under either Pennsylvania or Connecticut law.  Consistent with the foregoing caselaw, I now turn to an examination of the limitation periods in both states in order to determine which "first bars the claim."

## A. Pennsylvania

Pennsylvania's statute of limitations for actions for indemnification is four years. See 42 Pa.C.S. § 5525(a)(8). This provision provides in relevant part:

> [T]he following actions and proceedings must be commenced within four years:
>
> \*       \*       \*       \*       \*       \*
>
> (8) An action upon a contract, obligation or liability founded upon a writing not specified in paragraph (7), under seal or otherwise, except an action subject to another limitation specified in this subchapter.

Id. This four-year limitations period applies to indemnification contracts. See, e.g., Thermo King Corp. v. Strick Corp., 467 F.Supp. 75 (W.D. Pa. 1979).

In determining when a claim accrues, Pennsylvania law distinguishes between agreements that indemnify against *liability* and agreements that indemnify against *loss*. See, e.g., Coleman v. City of Bradford, 204 A.2d 260, 261 (Pa. 1964). The Pennsylvania Supreme Court has explained:

> Where the indemnity is against liability, there is a right to recovery as soon as liability is incurred. Where it is against loss by reason of liability, there is no right of recovery until a loss occurs. Where the contract is strictly one of indemnity [*i.e.*, indemnity against loss] the indemnitee cannot recover until he has suffered actual loss or damage. The mere incurring of liability gives him no such right; but, where the contract is to protect against liability, the indemnitee may recover as soon as liability has become **fixed and established**, even though he has sustained no actual loss or damage at the time he seeks to recover.

Id. (internal citations and quotations omitted) (emphasis supplied). Thus, an action for indemnity against loss accrues when the indemnitee suffers "actual loss or damage," generally by making an actual payment on behalf of the obligation of the indemnitor. See, e.g., Bradford, 204 A.2d at 261; Hughes v. Prudential Lines, Inc., 624 A.2d 1063, 1064-65 (Pa. Super.1993) ("[U]nder an indemnity contract the insurer is required to indemnify the insured only after the insured has sustained an actual loss, i.e., *after the insured has paid*")(emphasis added); Burns & McDonnell Engineering Co., Inc. v. Torson Constr. Co., Inc., 834 S.W.2d 755, 758 (Mo. App. 1992) ("If the indemnity is against loss, . . . [t]his contemplates actual payment by the indemnitee for the obligation which the party has been

found liable.").

In contrast, an action for indemnity against liability accrues when the liability becomes "fixed and established," a term of art that Pennsylvania courts have not yet defined. Other jurisdictions that have examined the phrase have held that:

> [t]he mere assertion of a claim against the indemnitee does not "fix and establish" liability, but only subjects the party to potential liability to be determined with the outcome of the [underlying] lawsuit. Therefore, a cause of action for indemnity against liability cannot accrue until the claim against the indemnitee is completely resolved. Only then is the party's liability "fixed and established."

Burns & McDonnell, 834 S.W.2d at 758. Most courts have concluded that the resolution of the underlying claim against the indemnitee is generally not "fixed and established" until a settlement agreement is reached or judgment is entered. See, e.g., Westchester Fire Ins. Co. v. Utica First Ins. Co., 839 N.Y.S.2d 91, 94 (2007) (holding that "liability became legally fixed with the execution of [a] settlement agreement [which] created a legal obligation on [the indemnitee's] part against which [the indemnitor] was required to indemnify."); Shapiro Sales Co. v. Alcoa, Inc., 2006 WL 2228987, *3 (E.D. Mo. 2006) ("The underlying . . . suit has yet to be fully resolved," thus, the indemnitee "has not sustained any loss, nor has it had its liability determined."); Glidewell v. S.C. Management, Inc., 923 S.W.2d 940, 960 (Mo. App. S.D. 1996); Levin v. Friedman, 317 A.2d 831, 834 (Md. App. 1974) ("Where . . . the contract is one of indemnity against liability, it is generally held that an action may be brought and recovery had as soon as the liability is legally imposed, as when judgment is entered . . ."); Abadie v. Gluck's Restaurant Corp., 121 So. 757, 758-59 (La. 1929) ("It is well settled that: 'Where the indemnity is against liability, the cause of action is complete and the indemnitee may recover on the contract as soon as his or her liability has become fixed and established, even though he or she has sustained no actual loss or damage at the time he or she seeks to recover. Thus, under such a contract, a cause of action accrues to the indemnitee on the recovery of a judgment against him or her, and he or she may recover from the indemnitor without proof of payment of the judgment.'") (quoting 42 C.J.S. INDEMNITY § 26). On the basis of this authority, the Plaintiff contends that the claim did not accrue until liability was fixed and established on May

4, 2006, when CSC and the Department agreed to settle the claim for $425,000.00.

Defendants argue that liability on the bonds was fixed and established at an earlier date, August 20, 2002, when the Department first asserted its claim for liability for tax due. They rely on language in the indemnity contract stating that Defendants' obligation to pay CSC arises "as soon as liability exists or is asserted against SURETY." However, as noted above, courts have consistently held that liability under an indemnification agreement is not fixed and established until settlement or entry of a judgment against the indemnitee. Indeed, in <u>United States Fidelity & Guaranty Co. v. Sequip Participacoes, S.A.</u>, 2003 WL 22743430 (S.D.N.Y. 2003), the district court considered and rejected the same argument that an agreement requiring indemnification "as soon as liability exists or is asserted against the Suret[ies]" served to fix and establish the indemnitee's liability prior to entry of a judgment. <u>Sequip</u>, 2003 WL 22743430 at *7. The court instead held that "a claim for indemnification against liability accrues once the indemnitee's liability to others has been fixed and established by a judgment obtained against the indemnitee." <u>Id</u>. (citing <u>Hutton Constr. Co., Inc. v. County of Rockland</u>, 1993 WL 535012, *8 (S.D.N.Y. 1993); <u>Goodridge v. Harvey Group, Inc</u>., 788 F.Supp. 115, 133 (S.D.N.Y. 1991)).

The indemnification agreement at issue here most closely resemble a third type of indemnity contract, that which indemnifies against *both* liability and loss. <u>See</u>, <u>e.g.</u>, <u>Burns & McDonnell Engineering Co., Inc. v. Torson Constr. Co., Inc</u>., 834 S.W.2d 755, 758 (Mo. App. 1992) ("There are also contracts where indemnification against loss and liability are intermixed."); <u>Amoco Oil Co. v. Liberty Auto & Elec. Co</u>., 810 A.2d 259, 264 (Conn. 2002) ("[W]e also have acknowledged that some indemnification agreements constitute agreements to indemnify against both loss and liability."); <u>see</u> <u>also</u> <u>First Indemnity of America Ins. Co. v. Kemenash</u>, 744 A.2d 691, 696-97 (N.J. Super. App. 2000). While Pennsylvania courts have yet to address the issue of accrual in the context of agreements which indemnify against both liability and loss, other jurisdictions have tended towards the view that such contracts give rise to separate causes of action against both loss and liability, with independent accrual dates for each. <u>See</u> <u>Kamenash</u>, 744 A.2d at 698 (concluding that

such contracts contain two separate "covenants" that "may be treated as separate agreements" for purposes of determining when a plaintiff's cause of action accrues). Under this standard, the indemnitee has the option to sue for indemnification against liability when that claim accrues or wait until payment has been made and sue for indemnification against loss:

> [W]here [an] indemnity agreement indemnifies against liability as well as against loss, indemnitee does not have to wait until loss occurs, but may sue on the agreement as soon as liability is incurred. See, e.g. 24 Leggett Street Ltd. Partnership v. Beacon Industries, Inc. 239 Conn. 284, 685 A.2d 305 (Conn.1996). This holding is consistent with the interpretation of the above-stated rule; namely, the indemnitee has a claim for the liability and may so move before the loss is actually incurred. This does not mean, however, that the indemnitee must file suit at the time the liability is incurred. It simply means that the party does not need to wait until the loss occurs-it may file immediately when the liability incurs. It is also consistent with the ruling that the covenants are separate and the cause of action for the liability claim may be asserted even though the loss has not yet occurred.

Century Insurance Co. v. TAC Int'l Constructors, Inc., 2006 WL 1109447, *4 (N. Mariana Islands 2006); see also Kamenash, 744 A.2d at 698 (holding that dual indemnification agreements give rise to separate causes of action that allow a plaintiff "to maintain an action for recovery of actual loss even though the time had expired for an action to recover on the covenant to indemnify for liability.") (citing United States Credit Bureau, Inc. v. Claus, 179 P.2d 36, 37-38 (Cal. 1947)).

Here, it is unnecessary to predict whether Pennsylvania courts would adopt the approach discussed in the above cases when dealing with agreements which indemnify against both liability and loss because Plaintiff's claim is timely under either scenario. The cause of action for indemnity against liability did not accrue until liability became "fixed and established" on May 4, 2006, when CSC and the Department entered into the Settlement Agreement obligating CSC to pay the sum of $425,000.00. See, e.g., Westchester Fire, 839 N.Y.S.2d at 94; Shapiro Sales Co., 2006 WL 2228987 at *3; Glidewell, 923 S.W.2d at 960; Levin, 317 A.2d at 834. The cause of action for indemnity against loss did not accrue until May 30, 2006, when CSC paid the claim. See, e.g., Bradford, 204 A.2d at 261. Consequently, the limitations period on Plaintiff's claim based on liability or loss would not expire until May 4, 2010, or May 30, 2010, respectively. The Plaintiff's action is timely

under Pennsylvania law.

### B. Connecticut

Under Connecticut law, the limitations period for "action[s] for indemnification" is three

years. See Conn. Gen. Stat. § 52-598a. The statute states:

> Notwithstanding any provision of this chapter, an action for
> indemnification may be brought within three years from the date of
> the determination of the action against the party which is seeking
> indemnification *by either judgment or settlement.*

Id. (emphasis added). This section "expressly provides that a cause of action for indemnity does not

arise until the determination of the underlying action against the party seeking indemnification" by

judgment or settlement. Sivilla v. Philips Med. Sys. of N. Am., Inc., 700 A.2d 1179, 1185 (Conn.

App. 1997); see also Walsh v. Seaboard, 94 F.Supp.2d 205, 213 (D. Conn. 2000); Republic Ins. Co.

v. Pat DiNardo Auto Sales, Inc., 678 A.2d 516, 522 (Conn. Super. 1995), *aff'd*, 677 A.2d 21 (Conn.

App. 1996) (per curiam). This provision "unambiguous[ly] and clear[ly] . . . applies to all actions

for indemnification," including those "aris[ing] . . . by express contracts." Republic Insurance, 678

A.2d at 519.

In Republic Insurance, the plaintiff, as surety, and the defendants, as principals, executed a

surety bond in 1978 for the completion of subdivision improvements for a third-party municipality.

Id. at 517. In consideration for the bond, defendants signed an indemnification agreement providing

that defendants would indemnify the surety against liability and loss. The defendants breached the

terms of the bond at some point prior to 1986, prompting the municipality to file suit against the

surety to recover on the bond. Judgment was entered on May 13, 1991, and the surety satisfied its

obligation to the municipality by making a payment of $91,000 on May 2, 1991. Id. On December

18, 2002, the surety brought suit against the defendants pursuant to the indemnification agreement

to recovery the monetary damages paid to the municipality. Id.

At trial, defendants argued that the surety's claims were barred by the statute of limitations

because the surety "could have sued upon the agreement as soon as the underlying contract with the

9

town was breached." Id. at 518. The surety countered that, pursuant to § 52-598a, its cause of action for indemnity "accrued at the time of the payment, May 2, 1991." Id. The court first noted that the language of the indemnity agreement provided indemnification "against both loss and liability." Id. (citing Balboa Ins. Co. v. Zaleski, 532 A.2d 973 (Conn. App. 1987)). The court acknowledged that in Balboa, a case that preceded the enactment of § 52-598a, the Connecticut Appellate Court had held that a cause of action to enforce an indemnity against liability and loss accrued "at the time of default on the underlying contract." Balboa, 532 A.2d at 976. The Republic Insurance court, however, concluded that the newly enacted § 52-598a "legislatively overruled" the Balboa decision and that, therefore, "[t]he cause of action . . . accrued at the time of the payment, May 2, 1991." Republic Insurance, 678 A.2d at 522. Applying § 52-598a to the underlying facts, the court concluded that the surety's action, instituted within three years of that date, was timely. Id.

In Walsh v. Seaboard, the defendant, as surety, and plaintiff, a general contractor, executed a general agreement for indemnity relative to an existing construction contract between plaintiff and the owners of a forge. Walsh, 94 F.Supp.2d at 207. In June, 1988, the forge owners informed plaintiff that it had breached the terms of the construction contract. Id. The forge owners subsequently demanded that the surety finance the remainder of the project and filed a demand for arbitration. The arbitrator issued an award on June 30, 1992, and the award became final in April, 1994, when the Connecticut Supreme Court declined review. Id.

On July 12, 1996, the surety filed four counterclaims against the contractor in a subsequent bad faith action. Id. The contractor moved for summary judgment, arguing that the counterclaims, each based upon the indemnification agreement, were untimely. Applying § 52-598a, the district court held that a claim for indemnification does not arise until the "rights and liabilities" of the parties in the underlying proceeding are "fixed." Id. at 213. The court then concluded that the surety's claims, filed in 1996, were not time-barred because "the rights and liabilities of the parties were not fixed until April 1994, when the Supreme Court rejected [the forge owners'] final challenge." Id. at 213.

10

Here, Plaintiff settled the underlying action with the Department on May 4, 2006 by agreeing to pay the sum of $425,000.00. Based on the plain language of the statute, Plaintiff's claim for indemnification did not accrue until that date and its claim under Connecticut law is timely as the Connecticut statute of limitations did not expire until May 4, 2009.[3] See Walsh, 94 F.Supp.2d at 213; Republic Insurance, 678 A.2d at 522.

Notwithstanding the clear language of § 52-598a, the Defendants argue that the Connecticut Supreme Court's holding in Amoco Oil Co. v. Liberty Auto & Elec. Co., 810 A.2d 259 (Conn. 2002), supports their contention that the liability claim accrued on September 13, 2002, when the proof's of claim were submitted by the Department. In Amoco, the Supreme Court was called upon to determine whether a claim for damages asserted by the plaintiff constituted an indemnification claim or a claim for breach of contract. After analyzing the relationship between the parties and the agreement at issue, the Court held that Amoco's claim constituted a breach of contract claim, rather than an action for indemnification, and proceeded to determine the accrual date and the applicable statute of limitations based upon principles of contract law. Id. at 266. In the course of its opinion, the Court commented upon the distinction between various types of indemnity agreements, including those that indemnify against both liability and loss. Id. at 264. Defendants seize upon the following language in support of their contention that the cause of action accrued on September 13, 2002:

> When an agreement indemnifies against both loss and liability, we have concluded that the statute of limitations begins to run as soon as liability is incurred. It is logical that the action accrues when liability is incurred because if loss is the payment that discharges the liability, loss will always follow liability. Thus, the first moment in time when an indemnitee can successfully maintain an action to enforce the terms of the agreement that indemnifies against both loss and liability is when liability is incurred.

Id at 266.

Defendants' reliance on Amoco is misplaced. The above language is clearly dicta and the

---

[3]    Assuming the cause of action arose in Connecticut, Connecticut's limitations period would apply under the Pennsylvania borrowing statute as it would first bar the claim. As discussed above, it is somewhat academic since Plaintiff's cause of action is timely under Pennsylvania law as well.

Defendants do not contend otherwise. In addition, it is by no means clear that <u>Amoco</u>'s discussion

of indemnity agreements containing both loss and liability provisions is necessarily inconsistent with

§ 52-598a. As stated in <u>Century Insurance</u>:

> The passage in <u>Amoco</u> states that the first moment in time that a party
> under this mixed type of agreement can successfully maintain an
> action is when liability incurs. To say "first moment in time" suggest
> that there would also be a second moment in time. That second
> moment in time is when loss actually occurs. Indeed, in the <u>Amoco</u>
> opinion itself, the court finds that the statute of limitations starts at
> different times for loss and liability, noting that this distinction
> between indemnity against loss and that of liability has been
> understood for over 140 years.

<u>Century Insurance</u>, 2006 WL 1109447 at *4 (quoting <u>Amoco</u>, 810 A.2d at 263-64) (internal

quotations omitted). Finally, the courts of Connecticut are bound by the clear language of § 52-

598a. <u>See</u>, <u>e.g.</u>, <u>Republic Insurance</u>, 678 A.2d at 521. I conclude, therefore, that Plaintiff's action

is also timely under Connecticut law.


**IV. CONCLUSION**

For the reasons set forth above, Defendant's motion for summary judgment is denied.

Plaintiff's motion for summary judgment is granted. Judgment will be entered in favor of Plaintiff.

| | | |
|---|---|---|
| THE INSURANCE COMMISSIONER OF THE STATE OF CONNECTICUT, as Liquidator of the Connecticut Surety Company, | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-262 Erie |
| | ) | |
| RUDOLPH A. NOVOTNY and KAREN J. NOVOTNY, | ) ) | Judge Sean J. McLaughlin |
| | ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this 11th day of June, 2009, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Defendant's motion for summary judgment is denied. Plaintiff's motion for summary judgment is granted. Judgment will be entered in favor of Plaintiff and against Defendants, jointly and severally, in the liquidated amount of $576,551.06 with interest at the rate of 6% per annum.

> /s/ Sean J. McLaughlin
> United States District Judge

cm: All parties of record. ___