# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE INSURANCE COMMISSIONER OF THE STATE OF CONNECTICUT, as Liquidator of the Connecticut Surety Company, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 07-262 Erie |
| RUDOLPH A. NOVOTNY and KAREN J. NOVOTNY, | ) ) ) | Judge Sean J. McLaughlin |
| Defendants. | ) ) | |

## **MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., J.

This matter is before the Court upon a Motion to Compel Responses to Third Request for Production of Documents filed by the plaintiff, The Insurance Commissioner of Connecticut ("Plaintiff"), as Liquidator of the Connecticut Surety Company ("CSC"). This Court has jurisdiction pursuant to 28 U.S.C. § 1332. For the reasons which follow, the motion will be granted.

## I. BACKGROUND

Defendants Rudolph A. Novotny and Karen J. Novotny ("Defendants") are the managing members of RAN Oil Company ("RAN Oil"), a Pennsylvania limited liability company. On April 12, 1999, Defendants executed a General Indemnity Agreement ("the GIA") with CSC, a Connecticut surety company that issues commercial and contract surety and fidelity bonds. Shortly thereafter, RAN Oil failed to pay fuel taxes

that it owed to the Pennsylvania Department of Revenue ("the Department"). The Department filed claims with CSC to recover RAN Oil's unpaid taxes, and on May 4, 2006, CSC and the Department entered into a settlement agreement whereby all claims against CSC were resolved in consideration of a settlement amount of $425,000.00. CSC then sought indemnification from Defendants pursuant to an indemnification clause contained in the GIA. When Defendants failed to respond, Plaintiff filed the instant action on September 24, 2007 on behalf of CSC pursuant to the powers conferred upon the Insurance Commissioner under Connecticut's Insurers Rehabilitation and Liquidation Act, Conn. Gen. Stat. §§ 38a-903 *et seq*.

Following cross-motions for summary judgment, this Court entered an order on June 11, 2009, granting summary judgment in favor of Plaintiff and against Defendants, jointly and severally, in the liquidated amount of $576,551.06 with interest at the rate of 6% per annum. Plaintiffs are now seeking to discover financial information relating to the Defendants' assets in order to execute upon that judgment. Defendants have submitted a privilege log identifying portions of the requested discovery that they contend are subject to the accountant-client privilege. This matter is ripe for review.

## II. DISCUSSION

Pursuant to the instant motion, Plaintiff is seeking to discover various documents in the possession of Gary Diefenbach, a certified public accountant utilized by Defendants, concerning Defendants' assets, cash flow, and other financial information. Primarily at issue are the following documents, each of which Defendants have designated as subject to the accountant-client privilege in their privilege log:

- Handwritten worksheets pertaining to Defendants' gross income (Privilege Log, Nos. 3, 6, 9, 12, 16)

- Letter to Attorney McCandless[1] concerning Defendants' financial status (Privilege Log, No. 2)

- Letters from Diefenbach to McCandless concerning Defendants' tax returns (Privilege Log, Nos. 4, 7, 13-14)

- Diefenbach's handwritten notes concerning Defendants' annual income sources (Privilege Log, Nos. 8, 10)

- Documents relating to preparation of Defendants' tax returns (Privilege Log, Nos. 17-25)

- Diefenbach's handwritten note dated 4-14-08 titled "Rudy Novotny Tax Cost of Rye Brook $120,000 Salary (Privilege Log, No. 26)

- Diefenbach's handwritten notes concerning Defendants' deductions from K-1 Income with spreadsheets of member's draw (Privilege Log, No. 27)

- Documents concerning Defendants' cash flow for years 2004-2007

- Handwritten worksheets concerning member draw spreadsheets for RAN East equity (Privilege Log, No. 30)

- Diefenbach's handwritten notes showing member draws for Rye Brook (Privilege Log, No. 32)

(See Defendants' Privilege Log with Respect to the Files of Gary Diefenbach, C.P.A., Dkt. #81). These documents, each of which relates to Defendants' financial assets and income, are clearly relevant to Plaintiff's efforts to execute upon its judgment and, therefore, would ordinarily fall within the broad scope of post-judgment discovery permitted by the Federal Rules of Civil Procedure. See Essex, 2008 WL 2757862, *2 ("The finances of [Defendant] itself . . . are clearly relevant to Essex's effort to execute upon its judgment.") (quoting Dering v. Pitassi, 1988 WL 115806, * 1 (E.D. Pa. 1988)

---

[1] With respect to documents 2, 4-5, 7, 11, 13-15, 28 and 31, Defendants assert both the accountant-client privilege and the attorney-client privilege. In its Motion to Compel, Plaintiff does not address (or even mention) Defendants' assertion of the attorney-client privilege with respect to these documents. As such, they remain privileged.

3

(noting that "the scope of post-judgment discovery [under the Federal Rules of Civil Procedure] is broad, enabling a judgment creditor to obtain discovery not only of the debtor's current assets, but also of past financial transactions . . .").

Defendants contend, however, that each of these documents fall within the scope of Pennsylvania's accountant-client privilege statute, codified at 63 P.S. § 9.11a, which states:

> Except by permission of the client engaging him or the heirs, successors or personal representatives of a client, a licensee or a person employed by a licensee shall not be required to, and shall not voluntarily, disclose or divulge information of which he may have become possessed unless the sharing of confidential information is within the peer review process. This provision on confidentiality shall prevent the board from receiving reports relative to and in connection with any professional services as a certified public accountant, public accountant or firm. The information derived from or as the result of such professional services shall be deemed confidential and privileged. Nothing in this section shall be taken or construed as prohibiting the disclosure of information required to be disclosed by the standards of the profession in reporting on the examination of financial statements, or in making disclosure in a court of law or in disciplinary investigations or proceedings when the professional services of the certified public accountant, public accountant or firm are at issue in an action, investigation or proceeding in which the certified public accountant, public accountant or firm is a party.

63 P.S. § 9.11a. The purpose of this privilege is to "encourage people to make use of professional accounting services and to be frank and candid with such professionals." Essex Insurance Co. v. RMJC, Inc., 2008 WL 2757862, *3 (E.D. Pa. 2008) (quoting Zepter v. Dragisic, 237 F.R.D. 185, 189 (N.D. Ill. 2006)). However, because evidentiary privileges are "in derogation of the search for truth," they should not be "expansively construed." United States v. Nixon, 418 U.S. 683, 710 (1974). Indeed,

the Third Circuit has held that "Pennsylvania's statutory accountant-client privilege in particular must be strictly construed because, unlike the attorney-client privilege . . . it was not recognized at common law." Essex, 2008 WL 2757862, *3 (citing United States v. Bowman, 358 F.2d 421 (3rd Cir. 1966)). Finally, because the privilege belongs to the client, rather than to the accountant, the client "may waive the privilege through conduct inconsistent with its assertion." Id. (quoting Edmonds v. Surgical Monitoring Assocs., Inc., 2008 WL 1924253, *2 (E.D. Pa. 2008).

Here, Plaintiff contends that Defendants have waived their right to assert the accountant-client privilege with respect to the documents at issue by agreeing to the following provision contained in the GIA:

BOOKS AND RECORDS

13. At any time during this Agreement and **until such time as the liability of SURETY under all BONDS IS TERMINATED AND SURETY is fully reimbursed all amounts due to it under this Agreement**, SURETY shall have an unrestricted right of access to the books, records, accounts, documents, computer software and other computer-stored information of PRINCIPAL and INDEMNITORS, **wherever located**, for the purpose of inspection, copying or reproduction. Any financial institution, depository, materialman, supply house, **or other person, firm or corporation**, when requested by SURETY, is hereby authorized and required to furnish SURETY any and all information requested, including, but not limited to, the status of the work under any CONTRACT and payments or pending payments of accounts and full information about all bank accounts and loans and any collateral posted in connection therewith. Upon SURETY's request, PRINCIPAL and INDEMNITORS shall immediately turn over to SURETY, or its designee, at a time and place and in a manner determined by SURETY, such books, records, accounts, documents, computer software and other computer-stored information, and contracts in whatever form, as and when requested by SURETY.

(See Exhibit 1, General Indemnification Agreement) (emphasis added). By expressly granting permission for Plaintiff to access and inspect records, documents and financial information, Plaintiff contends that this provision of the GIA created a duty on the part of Defendants to comply with any requests by Plaintiff to obtain records and information in connection with Defendants' obligations under the GIA. Plaintiff, citing Essex, argues that Defendants' conduct in agreeing to the aforementioned obligation represents a waiver of the accountant-client privilege.

In Essex, the plaintiff, an insurance company, had issued a general liability policy to defendant, a nightclub operator, which contained a provision that expressly authorized plaintiff to "obtain records and information" from defendant in connection with any claim which might arise concerning the liability policy. Essex, 2008 WL 2757862, *1. Following an altercation with the nightclub's staff, an injured patron sued the nightclub and was awarded $350,000 in damages. Consistent with the general liability policy, Essex paid the judgment amount to the injured patron and then, in a subsequent action, obtained a judgment for reimbursement from defendant in the amount of $410,315.15. Essex then served a subpoena on defendant's certified public accountant seeking financial information and records in aid of execution on the judgment. Defendant responded by filing a motion to quash the subpoena, asserting that the requested materials were protected by the accountant-client privilege. The court disagreed:

> The present action concerns Essex's duty to indemnify RMJC. Underlying the dispute in this court is the insurance policy RMJC purchased from Essex that requires Essex to provide a legal defense as well as coverage for certain negligent acts RMJC or its agents may have committed. Just as Essex has certain duties it

> owes RMJC in that insurer-insured relationship, RMJC owes certain duties to Essex. Under the heading of "Duties in the Event of Occurrence, Offense, Claim Or Suit," the policy in issue states: "You [RMJC] and any other involved insured must ... (2) Authorize us to obtain records and information; ...." The policy thus requires RMJC to allow Essex to obtain records and information in connection with any claim concerning commercial general liability against RMJC. There is no limitation in this regard. The policy language does not exclude situations where RMJC and Essex are litigating against each other. Accordingly, RMJC has contractually waived any accountant-client privilege vis-a-vis Essex under Pennsylvania law, and we will deny the motion of RMJC to quash the subpoena.

Essex, 2008 WL 2757862, *3.

I find the holding in Essex to be on point and persuasive. As in Essex, Defendants entered into an agreement with Plaintiff which authorized Plaintiff to obtain records and information, wherever they might be located, concerning Defendants' assets and finances. Consequently, Defendants have "contractually waived any accountant-client privilege . . . under Pennsylvania law" with respect to the documents sought. Id.

Defendants respond that, even if the GIA's disclosure provision does constitute a waiver of the accountant-client privilege, Plaintiff's reliance on that provision runs afoul of Pennsylvania's common-law "merger doctrine" which provides that, once a debt arising from a contract is reduced to a judgment, the contractual relationship between the parties that gave rise to the debt is "merged" into the judgment and extinguished, "thereby depriving a plaintiff from being able to assert claims based on the terms and provision of the contractual instrument." Lance v. Mann, 360 Pa. 26 (1948); see also In re Stendardo, 991 F.2d 1089, 1097 (3rd Cir. 1993); In re Foy, 2012 WL 1229924, *4

(Bankr. E.D. Pa. 2012). Similar to the doctrine of *res judicata*, the purpose of the merger doctrine is to "prevent[] a multiplicity of suits" and "protect a party from the vexation of having to defend itself against a claim for which a final judgment has already been entered." Kessler v. Old Guard Mut. Ins. Co., 570 A.2d 569, 573 (Pa. Super. 1990) (quoting Consolidated Coal Co. v. District 5, United Mine Workers of America, 485 A.2d 1118, 1123 (1984)). In Kessler, for example, the plaintiffs prevailed at trial in an action against their fire insurance carriers and were awarded a judgment in the amount of $342,000. The judgment amount was based solely on actual damages and mistakenly failed to account for pre-judgment interest. Subsequently, plaintiffs filed a claim, based on the insurance contract, to recover pre-judgment interest. Citing the merger doctrine, the court held that the original judgment obtained by the plaintiffs was final and, as such, plaintiffs' action to recover pre-judgment interest was merged into that judgment and could not be separately maintained. As explained by the court:

> The law does not permit the owner of a single or entire cause of action to divide or split that cause so as to make it the subject of several actions. 46 Am.Jur.2d Judgments § 405.
>
> \* \* \* \* \* \* \* \*
>
> After the plaintiff recovers a final judgment, his original claim is extinguished and rights upon the judgment are substituted for it. "The plaintiff's original claim is said to be 'merged' in the judgment." Restatement (Second) of Judgments § 18 comment a. Thus, the finality of a judgment extends not only to matters actually determined but also to matters which could properly have been raised and determined therein. 46 Am.Jur.2d § 417.

Kessler, 570 A.2d at 573. Other courts have applied the merger doctrine to prevent a party's attempt to assign a credit account that had already been reduced to judgment, In re Foy, 2012 WL 1229924, *4, to correct an improperly calculated damage liability

8

amount, Lance, 60 A.2d at 27-28, to enforce an attorney's fee provision in a mortgage agreement that had been reduced to judgment, In re A&P Diversified Technologies Realty, Inc., 467 F.3d 337, 342-43 (3rd Cir. 2006), and to recover post-judgment expenses based upon a mortgage agreement that had been prosecuted to final judgment, In re Stendardo, 991 F.2d at 1096.

Unlike in each of the proceeding cases, Plaintiff's motion to compel does not state a new cause of action or claim for relief based on the terms and provisions of the GIA. Rather, it represents a routine attempt to obtain discovery concerning Defendants' assets consistent with the broad scope of permissible post-judgment discovery under the Federal Rules of Civil Procedure. The motion to compel does not invoke the GIA for the purpose of asserting an "action on the original claim or part thereof," Kessler, 570 A.2d at 573, but rather, to demonstrate, as a factual matter, that Defendants have waived their right to assert the accountant-client privilege against Plaintiff with respect to the financial records and documents at issue. Consequently, I conclude that the requested documents and records are not protected by the attorney-client privilege and must be disclosed by Defendants.[2]

### III. CONCLUSION

---

[2] Plaintiffs also contend that the accountant-client privilege is inapplicable as a matter of law because it contains an exception for "disclosures in a court of law." 63 P.S. § 9.11a. The parties vigorously dispute the meaning and scope of this exception. However, because I have concluded that Defendants have waived their right to assert the accountant-client privilege with respect to the documents at issue here, I need not address this state law issue.

For the foregoing reasons, and consistent with this memorandum opinion, Plaintiff's Motion to Compel is hereby granted with respect to those documents listed in Defendants' privilege log over which the accountant-client privilege has been asserted.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE INSURANCE COMMISSIONER OF THE STATE OF CONNECTICUT, as Liquidator of the Connecticut Surety Company, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| vi. | ) ) | Civil Action No. 07-262 Erie |
| RUDOLPH A. NOVOTNY and KAREN J. NOVOTNY, | ) ) ) | Judge Sean J. McLaughlin |
| Defendants. | ) | |

## ORDER

AND NOW, this 8th day of June, 2012, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Plaintiff's Motion to Compel is hereby granted with respect to those documents listed in Defendants' privilege log over which the accountant-client privilege has been asserted. Defendants are HEREBY ORDERED to produce those documents on or before June 29, 2012.

/s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record. ___